UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
**ROCHELLE DENOON**                                   Case No.:

                       **Plaintiff,**

      -against-                                    **COMPLAINT**
                                                          **AND JURY DEMAND**

**RICHARD SOKOLOFF and**
**RICHARD D. SOKOLOFF, ATTORNEY AT LAW, PLLC**

                      **Defendants.**
-----------------------------------------------------------------X

## INTRODUCTION

Plaintiff Rochelle Denoon brings suit against Defendant Richard Sokoloff, a debt collection attorney, for his violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq.*, and N.Y. Jud. Law § 487.

## SUMMARY OF CLAIMS

In 2013 Defendants Richard D. Sokoloff, Attorney at Law, PLLC ("the PLLC") and Richard Sokoloff, a debt collection law firm and its principle, filed a collection lawsuit against now-Plaintiff Rochelle Denoon. Ms. Denoon retained an attorney, who filed and served an answer on the opposing counsel, Mr. Sokoloff.

Sokoloff represented non-party Lenox Hill Medical Anesthesiology, PLLC to collect a medical debt allegedly owed by Plaintiff Rochelle Denoon. In April of 2016 Mr. Sokoloff surreptitiously obtained a default judgment against Plaintiff by swearing—falsely—that Plaintiff had failed to answer the summons and complaint or otherwise appear in the action. In fact, Plaintiff had served a timely answer to the complaint, asserting numerous affirmative defenses and counterclaims.

Mr. Sokoloff concealed his deception by failing to serve Plaintiff or her lawyer with the

application for default judgment. As such, Plaintiff was unaware that a judgment had been entered against her until December of 2016, when she applied for a bank loan. Plaintiff promptly informed her attorney, Fabien Robley, of the default judgment.

Mr. Robley contacted Mr. Sokoloff and demanded that he execute a stipulation vacating the fraudulently obtained default judgment. Mr. Sokoloff refused, offering a series of false statements in an attempt to justify his misconduct. First, Mr. Sokoloff insisted that Plaintiff had failed to answer or otherwise appear in the collection suit. When Mr. Robley informed Mr. Sokoloff that Plaintiff had, indeed, filed a timely answer to the complaint, Mr. Sokoloff nonetheless refused to execute the stipulation. Mr. Sokoloff maintained that the default judgment was proper because Plaintiff had failed to appear at a conference in the collection suit. This, too, was incorrect, and is contradicted by Mr. Sokoloff's own statements in the application for the default judgment.

Faced with Mr. Sokoloff's stubborn refusal to voluntarily vacate the judgment, Plaintiff was forced to file an order to show cause to vacate the improperly obtained default judgment. Mr. Sokoloff defaulted on the return date of the order to show cause, and the judgment was therefore vacated on January 23, 2017.

**JURISDICTION AND VENUE**

1. The Court has federal question jurisdiction over this lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, (the "FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplement jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claim within the Court's original

jurisdiction that they form part of the same case or controversy as required by Article 3 of the United States Constitution.

2.  Venue in this District is proper because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York County, New York.

**PARTIES**

3.  Plaintiff Rochelle Denoon ("Ms. Denoon" or "Plaintiff") is an individual residing in the State of New York.

4.  Defendant Richard Sokoloff ("Mr. Sokoloff") is a debt collection attorney whose principle place of business is 3245 Route 112, Suite One, Medford, NY 11763. Mr. Sokoloff attempts to collect putative consumer debts, including putative medical bills, by filing hundreds of collection lawsuits and sending out hundreds of collection letters. The court filings and letters go out under the signature of Mr. Sokoloff. Therefore Mr. Sokoloff is a debt collector as defined under 15 U.S.C. § 1692a(6) because he uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts. Further, Mr. Sokoloff is a debt collector because he regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

5.  Defendant Richard D. Sokoloff, Attorney at Law, PLLC ("the PLLC") is apparently the undisclosed corporate entity the Mr. Sokoloff uses as his law firm. All of the court filings are under the name of Mr. Sokoloff, and are signed by him. The PLLC is not listed on any of the court filings. However, the New York Secretary of State lists Mr. Sokoloff as the registered agent of the PLLC. The address Mr. Sokoloff lists on his court filings as his office is the same address used for the PLLC with the Secretary of State to mail process. It appears that Mr.

Sokoloff is the principle of the PLLC, and that he acting on behalf of the PLLC in the collection lawsuit. Therefore the PLLC is a debt collector as defined under 15 U.S.C. § 1692a(6) because it uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts.  Further, the PLLC is a debt collector because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

6.	In any event, Mr. Sokoloff is liable for his own misconduct irrespective of whether it was taken on behalf of the PLLC. Therefore, this complaint will reference them jointly and severally as "Defendants" or "Sokoloff."

## STATEMENT OF FACTS

*Defendants sue Ms. Denoon in New York Civil Court for a debt that she does not owe*

4.	In 2013, now-Plaintiff Rochelle Denoon was sued by Lenox Hill Medical Anesthesiology, PLLC (hereinafter "Lenox Hill") in New York Civil Court for a putative consumer debt she that did not owe. The lawsuit was captioned *Lenox Hill Med. Anesthesiology, PLLC.*, Case No: cv-29508/2013 (New York Civil Court) (hereinafter the "collection lawsuit"). Sokoloff represented Lenox Hill in the collection lawsuit. True and correct copies of the summons and complaint are attached as **Exhibit A** and incorporated by reference in their entirety.

5.	Ms. Denoon had a valid defense to the collection suit in that the medical treatment she received from Lenox Hill was necessitated by an accident that occurred in the course of her employment, and she received worker's compensation coverage for said treatment. Prior to filing the collection suit, Lenox Hill was advised of and actually knew of the worker's compensation

coverage and the corresponding claim number.[1]

### *Ms. Denoon, through her attorney, serves a timely verified answer to the complaint*

6.  The affidavit of service of the summons and complaint alleges that Ms. Denoon was served on April 19, 2014 via substituted service pursuant to NY CPLR § 308, and that the summons and complaint were mailed to Ms. Denoon on the same date. A true and correct copy of the affidavit of service is attached as **Exhibit B** and incorporated by reference in its entirety.

7.  Mr. Sokoloff filed the affidavit of service with the court on May 2, 2014.

8.  NY CPLR § 308(2) provides that "service shall be complete ten days after [filing of proof of service]." Service of the summons and complaint was therefore complete on May 12, 2014.

9.  NY CPLR § 320(a) provides that a defendant is required to answer or otherwise appear in the collection lawsuit within thirty days of the completion of service under CPLR § 308(2).

10. Thus, Ms. Denoon was required to answer or otherwise appear by June 11, 2014.

11. Ms. Denoon hired an attorney, Fabien Robley of the firm of Friedman Sanchez, to represent her in the collection case.

12. Ms. Denoon, through her attorney Mr. Robley, serving a timely verified answer dated June 10, 2014. True and correct copies of the verified answer and affidavit of service of the same are attached as **Exhibit C** and incorporated by reference in their entirety.

13. In her answer, Ms. Denoon asserted numerous affirmative defenses and counterclaims, including counterclaims for malicious prosecution and abuse of process.

### *Defendants surreptitiously file an application for default judgment, falsely alleging that Ms.*

---

[1] While suing for a debt not owed violates the FDCPA, Plaintiff does not bring this action based on that claim as it would be barred by the 1 year FDCPA statute. However, even time barred FDCPA violations may be relevant for determining the amount of statutory damages under 15 U.S.C. § 1692k(b) for the non-time-barred FDCPA claims. .

### *Denoon failed to answer or otherwise appear in the collection lawsuit*

14. Notwithstanding Ms. Denoon's timely appearance, Mr. Sokoloff furtively filed an application for judgment on default against Ms. Denoon on September 10, 2015. A true and correct copy of the application for judgment on default is attached as **Exhibit D** and incorporated by reference in its entirety.

15. Prior to signing the application for default Sokoloff was required to perform a meaningful attorney review to determine whether he had the legal right to file the application for default judgment.

16. In support of the application for judgment on default, Mr. Sokoloff affirmed, under penalty of perjury, that Ms. Denoon had failed to answer the complaint or otherwise appear.

17. But Sokoloff's affirmation was false. As explained above, Plaintiff served a timely answer to the complaint. *See* **Exhibit C**, p. 5, the affidavit of service of the verified answer.

18. Mr. Sokoloff never served Ms. Denoon or her counsel with the application for judgment on default. Ms. Denoon was therefore unaware that a judgment on default had been filed. Accordingly, a default judgment was entered in favor of Lenox Hill on April 6, 2016 for $2,620.96. **Exhibit E**. Mr. Sokoloff fraudulently concealed his fraud by not providing Ms. Denoon or her counsel notice of the application for default judgment.

### *Ms. Denoon learns of the default judgment and tries, unsuccessfully, to convince Defendants to correct their misstatements and to voluntarily vacate the default judgment*

19. Ms. Denoon did not learn of the default judgment until on or about December 13, 2016 when she was applying for a mortgage.

20. The mortgage company informed Ms. Denoon that they would have to charge her a

higher interest rate than previously quoted because the judgment was being reported on her credit report.

21. Frantic that she might no longer be able to afford her dream home because of the increase in interest, Ms. Denoon contacted Mr. Robley to ask what was going on and how there can be a judgment against her.

22. In turn, Mr. Robley contacted Mr. Sokoloff and demanded that he execute a stipulation to vacate the default judgment. Mr. Sokoloff refused and argued, incorrectly, that Ms. Denoon had failed to file an answer or otherwise appear in the collection case.

23. Incredibly, after Mr. Robley reminded Mr. Sokoloff that Ms. Denoon had in fact served a timely answer, Mr. Sokoloff nonetheless refused to vacate the default judgment.

24. Mr. Sokoloff insisted, falsely, that the default judgment was entered upon Ms. Denoon's failure to appear at a scheduled conference.

25. This explanation is directly contradicted by Mr. Sokoloff's own statement in the application for judgment on default, where Mr. Sokoloff swore under oath that the application was based on Ms. Denoon's failure to answer or otherwise appear in the action.

26. There had been no conferences in the collection suit, and thus no opportunity for Ms. Denoon to default on a scheduled appearance. A true and correct copy of an elaw printout is attached as **Exhibit F** and incorporated in its entirety. The elaw printout shows that no conferences were scheduled in the collection lawsuit.

27. After being confronted with indisputable evidence that the default judgment had been improperly obtained, Mr. Sokoloff nonetheless refused to execute a stipulation vacating the fraudulently obtained default judgment.

28. Due to Mr. Sokoloff's steadfast refusal to correct the record and voluntarily vacate the default judgment, Ms. Denoon was forced to file an Order to Show Cause to vacate the default judgment ("OSC").

29. Ms. Denoon filed her OSC on January 10, 2017. A true and correct copy of Ms. Denoon's OSC is attached as **Exhibit G** and incorporated by reference in its entirety.

30. Finding merit to Ms. Denoon's application, the Honorable Alexander M. Tisch issued an order on January 10, 2017 setting the matter for a hearing on January 23, 2017. *See* **Exhibit G**.

31. As directed by the court, Ms. Denoon promptly served Lenox Hill with a copy of the order.

32. Lenox Hill failed to appear at the January 23, 2017 hearing on the OSC. Accordingly, the judgment was vacated on default. A true and correct copy of the order vacating the default judgment is attached as **Exhibit H** and incorporated by reference in its entirety.

33. The state court action is still pending.

*Defendants' misconduct inflicted damages on Ms. Denoon*

34. Defendants' misconduct inflicted damages on Ms. Denoon.

35. As previously mentioned, Ms. Denoon first learned of the judgment when she was applying for a mortgage to purchase a home.

36. Ms. Denoon had been searching for a home and had finally found her "dream house."

37. Ms. Denoon works as a correctional officer at a maximum security prison for men. She had been working double shifts at the prison in order to save the money to purchase the house. She has to get up at 4:30 AM to commute 1 hour 20 minutes to the prison. She is done with the

double shift until 11:00 PM, when she commutes back again to get a few hours of sleep, before waking up at 4:30 AM and doing it all over again.

38. The mortgage company initially quoted her an interest rate that was low enough that, after working double shifts for many months, she would be able to afford.

39. The house was closer to work and would cut her commute time in half. This was an important benefit because it would give Ms. Denoon much needed personal time.

40. But then Sokoloff's fraudulently obtained judgment threatened to derail Ms. Denoon's plans and dreams.

41. On or about December 13, 2016 the mortgage company told Ms. Denoon that there was a judgment on her credit report. Therefore, the mortgage company said, the interest rate would have to go up.

42. Ms. Denoon was shocked and in a panic. She worked so hard to afford the house and now Sokoloff was pulling the rug from beneath her just as her plans and dreams were about to come to fruition.

43. Ms. Denoon was terrified that she would lose the house to another buyer, that she would not be able to afford the mortgage at the higher interest rate, and that even if she did get the mortgage she would have to pay much more for the mortgage over the life of the loan.

44. In a panic, Ms. Denoon contacted her attorney Mr. Robley to find out what was going on with the case. She did not even owe the debt she was sued on, she hired an attorney to defend her from the frivolous lawsuit, and now somehow Sokoloff got a judgment against her anyway.

45. As previously mentioned, Mr. Robley attempted to have Mr. Sokoloff voluntarily vacate the default judgment, but he refused, forcing Mr. Robley to file an order to show cause to vacate

the default judgment.

46. Mr. Robley was successful in vacating the fraudulently obtained default judgment, but Ms. Denoon suffered further damage by becoming contractually liable for additional attorney's fees and costs in vacating the default judgment.

47. Ms. Denoon could not sleep, tossing and turning thinking about what she was going to do to be able to get the home she had been working so hard for. She had to try to reach out with lenders during the day to explain what was going on and to try to keep the lower rate. But this was nearly impossible in the prison because she is not permitted to carry her phone while working. She was not in much of a position to be constantly going back and forth with lenders and trying to save her loan application.

48. Working as a female correctional officer in a high security men's prison is a job that, in and of itself, can be stressful.  Ms. Denoon had to constantly be on alert. She could not show weakness in front of the prisoners. And yet she had to constantly deal with the distraction of wondering how she was going to save her loan application, contacting the potential lenders during her breaks, and wondering if the judgment would ever be vacated. She was also working on little sleep, not just because of the double shifts, but also because she was tossing and turning in the few hours of sleep she did have, worried about what was going to happen.

49. Ultimately, after the judgment was vacated, she was able to close on her home.

50. The fraudulently entered judgment harmed Ms. Denoon's credit reputation. The fraudulently entered judgment was current or prospective creditors who were making decisions of extensions of credit.

**Sokoloff has a pattern and practice of signing his name to court papers and legal instruments that contain demonstrably false statements of fact.**

51.     Sokoloff routinely signs his name to court papers and legal instruments that contain demonstrably false statements of fact.

52.     Sokoloff represented the plaintiff in a case captioned *Aristocrat Plastic Surgery v Mary Dorfman*, Richmond County Civil Court, Index No: 007605-11/RI. There, the consumer, through counsel, filed and served upon Sokoloff a verified answer to the complaint. Nonetheless, despite knowing that the consumer was represented by counsel and had timely answered the complaint, Sokoloff filed an *ex parte* motion seeking a default judgment against the consumer, which was granted by the court. See **Exhibit I**.

53.     Similarly, in *Superior Medical Services, PC v. Eula Chase*, Queens County Civil Court, Index No: 061123-08/QU, the plaintiff, represented by Sokoloff, obtained a default judgment that was later vacated for lack of personal jurisdiction, and dismissed with prejudice. See **Exhibit J**.

54.     However, after the judgment had been vacated and the case dismissed, Sokoloff executed on the non-existent judgment by signing an information subpoena with restraining notice and serving the same on the consumer's bank account. The information subpoena with restraining notice falsely stated that there was a valid and enforceable judgment against the consumer.

55.     Also, in *C-Tec v. Teresa A. Leonardo*, Bronx County Civil Court, Index No: 9074-05/BX, the plaintiff, represented by Sokoloff, obtained a default judgment that was later vacated for lack of personal jurisdiction. See **Exhibit K**.

56.     Nonetheless, Sokoloff signed an information subpoena with restraining notice and remitted the same to the consumer's bank, causing a hold to be placed on her safe deposit box. The information subpoena with restraining notice falsely stated that there was a valid and

enforceable judgment against the consumer.

57. Adding insult to injury, when confronted with indisputable proof that the judgment had been vacated, Sokoloff refused to release the account. Sokoloff's unlawful refusal continued even after the consumer provided Sokoloff with a copy of the order of dismissal.

### COUNT 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

58. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

59. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

60. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

61. The obligation Defendants allege Plaintiff owes is a "debt" as defined by 15 U.S.C. § 1692a(5) because it derives services she obtained.

62. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

63. Mr. Sokoloff is a debt collection attorney Mr. Sokoloff attempts to collect putative consumer debts, including putative medical bills, by filing hundreds of collection lawsuits and sending out hundreds of collection letters. The court filings and letters regularly go out under the signature of Mr. Sokoloff. Therefore Mr. Sokoloff is a debt collector as defined under 15 U.S.C. § 1692a(6) because he uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts. Further, Mr. Sokoloff is a debt collector because he regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

64. The PLLC is apparently the undisclosed corporate entity the Mr. Sokoloff uses as his law firm to collect putative consumer debts. The collection lawsuits and collection letters regularly go out under the signature of Mr. Sokoloff. The PLLC is not listed on any of the court filings. However, the New York Secretary of State lists Mr. Sokoloff as the registered agent of the PLLC. The address Mr. Sokoloff lists on his court filings as his office is the same address used for the PLLC with the Secretary of State to mail process. It appears that Mr. Sokoloff is the principle of the PLLC, and that he acting on behalf of the PLLC in the collection lawsuit. Therefore the PLLC is a debt collector as defined under 15 U.S.C. § 1692a(6) because it uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts. Further, the PLLC is a debt collector because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another.

65. The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

66. Defendants materially violated the following sections of the FDCPA: 15 U.S.C. §§1692e, 1692f. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; the false representation or implication that any individual is an attorney or that any communication is from an attorney; misrepresenting the services rendered or compensation which may be lawfully received; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

## COUNT 2: NY JUDICIARY LAW § 487

67. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

68. New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

69. Defendants violated § 487 for the reasons states in the statement of facts.

70. Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487, and Plaintiff so seeks.

## PRAYER

**WHEREFORE**, Plaintiff Pablo Molgora respectfully requests the following relief:

a. A declaration that Defendants have committed the violations of law alleged in this action;

b. Statutory damages;

c. Actual, treble damages and punitive damages;

d. Costs, disbursements and attorneys' fees;

e. Prejudgment and post judgment interest as allowed by law;

f. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 20, 2017
Brooklyn, New York

/s/
_____
Ahmad Keshavarz
THE LAW OFFICE OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
*Attorney for the Plaintiff*